UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                    :
ROLEAN RAVENELL,                                    :
                                                    :
                              Plaintiff,            :        **REPORT AND RECOMMENDATION**
                                                    :
              -against-                             :        23 Civ. 2320 (DG) (VMS)
                                                    :
MAIMONIDES MEDICAL CENTER,                          :
                                                    :
                              Defendant.            :
                                                    :
------------------------------------------------------------ X

**Vera M. Scanlon, United States Magistrate Judge:**

      Before the Court is the motion to dismiss filed by Defendant Maimonides Medical Center

("Defendant").  See generally ECF Nos. 14-14-6.  Plaintiff Rolean Ravenell ("Plaintiff")

opposed the motion.  See generally ECF No. 23.[1]  Defendant replied.  See generally ECF No. 24-

24-1.  For the reasons discussed below, this Court respectfully recommends that Plaintiff's

complaint be dismissed without prejudice and that Plaintiff be granted leave to replead to remedy

the deficiencies identified in this report and recommendation.

---

[1] Plaintiff filed an earlier opposition to the motion.  See generally ECF No. 21.  Plaintiff then
filed a letter stating that she "received the letter stating that [she had] . . . a final extension of
time to [f]ile [a] [r]esponse/[r]eply by February 2, 2024," and, accordingly, "[a]lthough [she] . . .
submitted [an opposition] on January 19, 2024," she would "take this opportunity and submit a
final document on or before February 2, 2024."  ECF No. 22 at 1.  As such, the Court is
considering the subsequently filed "final" opposition at ECF No. 23 to be Plaintiff's opposition
to the motion.

I.     FACTS[2]

A.     Plaintiff's History Of Employment With Defendant

Plaintiff worked for Defendant for nearly seventeen years.  See ECF No. 1 at 1.[3]  She "was a patient-facing [r]adiation [t]herapist" who "work[ed] closely with patients and other staff at the Maimonides Cancer Center to administer radiation treatment to cancer patients."  Id. at 8.

B.     Defendant's Implementation Of A COVID-19 Vaccination Requirement For Employees[4]

In 2020 and 2021, Defendant "implemented the process to respond to the Department of Health's process to implement the C[OVID]-19 mandates," which included "seek[ing] to have the population of many parts of the world become vaccinated with the COVID-19 vaccine."  Id. at 1.  Defendant "followed the mandates of the DOH" in relation to implementing a COVID-19 vaccination requirement for employees.  Id. at 3.

Defendant's implementation of a COVID-19 vaccination requirement for employees (1) "resulted in significant emotional distress and financial loss to . . . Plaintiff," as "the vaccines . . .

---

[2] The recitation of facts is derived from Plaintiff's complaint, see generally ECF No. 1, as, in deciding motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must accept all factual allegations contained therein as true and draw all reasonable inferences in favor of the plaintiffs.  See New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo, 80 F.4th 158, 168 (2d Cir. 2023) (citation omitted).

[3] When citing to Plaintiff's complaint, the Court refers to page numbers, as opposed to paragraph numbers, due to the inconsistent paragraph numbering throughout Plaintiff's complaint.  See generally ECF No. 1.

[4] Largely relying on Med. Profs. for Informed Consent v. Bassett, 78 Misc. 3d 482 (Sup. Ct. Onondaga Cnty. 2023), in her complaint, Plaintiff appears to make a facial challenge to 10 NYCRR § 2.61, entitled "Prevention of COVID-19 Transmission by Covered Entities" (the "Regulation"), which has since been repealed.  See ECF No. 1 at 6-8.  The problems with any such purported facial challenge are at least threefold: (1) Plaintiff has not named as Defendants the governmental actors responsible for promulgating the Regulation; (2) the Regulation has been repealed, such that any facial challenge thereto would be moot; (3) Bassett, upon which Plaintiff relies, was issued in 2023, subsequent to her termination in 2021.

were rushed to the market [in the] race against death," id. at 1; see id. at 3 (noting that Defendant "overlooked the devastation to families and individuals caused by the impact of individuals losing their jobs because they did not have a religious or medical exemption[]"); id. at 4 (noting that "Plaintiff was terrified of how she would be able to meet monthly financial responsibilities" and "survived . . . off of the charity of friends and family"); id. at 10 (noting that the termination of employment for Plaintiff, who "is a single parent, with two children in college/trade school and a mortgage[,] . . . devastated her and her family, both financially and emotionally"); id. at 11 (noting Plaintiff's discomfort "about taking anything into her body that had been identified with adverse COVID reactions"); (2) "discriminated against individuals who were not vaccinated by fully promoting the untruth that people who took the vaccine would not spread or contract COVID-19," id. at 3; see id. at 8 (contending "that both the vaccinated and unvaccinated can contract and transmit COVID-19");[5] (3) "[p]romoted untruths," including that "Bells Palsy [is] not . . . contraindicated for [the] COVID[-]19 vaccine[,] . . . causing people to take the vaccine in spite of published studies indicating possible harm by taking the COVID-19 vaccine," id.; (4) "[f]ailed to offer any accommodation for the religious exemption though the hospital . . . has many positions at different levels," id. at 3; and (5) failed to reach out to offer assistance, id.

C.    **Plaintiff's Decision To Decline A Covid-19 Vaccination**

Plaintiff was aware of rationales in favor of and against becoming vaccinated against COVID-19 and, "after an intense period of prayer and self-examination, . . . made the decision

---

[5] Plaintiff recounts that, after her termination, "a staff member who worked in the same department, with the same duties as Ms. Ravenell[,] . . . contracted COVID and notified Maimonides and was told to return to work in 5 days," in spite of the staff member's desire to return to work only after ten days and re-testing for COVID-19, which Defendant rejected, purportedly evidencing that both vaccinated and unvaccinated individuals could transmit COVID-19 and Defendant's lack of concern for the health of its patients. Id. at 9-10.

not to take the COVID-19 vaccines for reasons related to her pre existing [sic] health issues with bells [sic] Palsy," which she had contracted twice before, "and her faith." Id. at 1-2, 11 (emphasis in original).

**D.    Plaintiff's Request For An Exemption From The COVID-19 Vaccination Requirement On A Religious Basis**

Plaintiff submitted to Defendant a request for an exemption from the COVID-19 vaccination requirement on a religious basis, namely that she was "a devout Christian," and "[i]t [wa]s against her religious beliefs to take aborted fetal cell lines into her body." Id. at 12. Her "exemption request was supported by clergy." Id. at 11. Plaintiff's request for a religious exemption was denied by Defendant on November 16, 2021. See id. at 11.

**1.    Plaintiff's Interaction With The Union**

In relation to the religious basis for Plaintiff's decision to decline the COVID-19 vaccination, Defendant "was openly not supportive of the religious exemption." Id. at 2. Plaintiff "approached the 1199 Union Delegate for the Cancer Center" and "ask[ed] if there was any assistance she could receive[,] as she had faithfully attended union meetings," but "was told [that] no one was supporting the religious exemption." Id. (emphasis in original).

**2.    Defendant's "Position Paper"**

Defendant issued a "position paper" on June 6, 2022, stating that "it [wa]s a healthcare institution that must comply with all rules and regulations issued by the New York State Department of Health[,] . . . including the COVID-19 mandate implemented in August 2021." Id. The "position paper" additionally stated that Defendant's requirement that Plaintiff be vaccinated against COVID-19 to continue her employment with Defendant as a radiation therapist, which was "a patient-facing position in the Maimonides Cancer Center," was put in effect to "comply[] with the Department of Health," the requirements of which Defendant "ha[d]

no ability to disobey" without "risk[ing] severe penalties, including the revocation of its license."
Id. (quotations omitted). The "position paper" further stated that "there [wa]s no religious
exemption to the COVID-19 mandate for patient[-]facing employees." Id.

> ### 3. Defendant's "Regulation"

Defendant issued a "[r]egulation" removing "any reference to a religious exemption as a
means not to abide by the vaccine mandate[;] as such[,] the DOH clearly show[ed] that a
religious exemption was not available to Maimonides personnel." Id. at 3.

> ### F. Plaintiff's Request For An Exemption From The COVID-19 Vaccination Requirement On A Medical Basis

Plaintiff submitted to Defendant a request for an exemption from the COVID-19
vaccination requirement on a medical basis, which was accompanied by "discharge papers" from
a physician who diagnosed her with Bell's Palsy and a note from a physician "to show the
considerable amount of anxiety and mental stress she was under knowing that she had two bouts
of Bells [sic] Palsy in the past," as "[b]eing forced to take a vaccine that had triggered the
condition in others was a cause of deep concern." Id. at 11.[6] Defendant "refused the medical
exemption on the basis that Bells [sic] Palsy [wa]s not contraindicated for Covid-19," in spite of
a study indicating that such vaccine increase[d] the risk of Bell's Palsy, which "can cause
significant mental and emotional health issues related to it[s] visible impact on the person's
twisted and stroke like [sic] facial appearance" that "can reoccur and . . . can last for a lifetime."
Id. at 8, 10-11.

---

[6] The note seems to be misdated as written on August 24, 2020, instead of on August 24, 2021.
See id. at 11.

### 1.     Defendant's "Position Paper"

In relation to the medical basis for Plaintiff's decision to decline the COVID-19 vaccination, Defendant issued a "position paper" on June 6, 2022, stating that "it [wa]s a healthcare institution that must comply with all rules and regulations issued by the New York State Department of Health[,] . . . including the COVID-19 mandate implemented in August 2021." Id. at 2. The "position paper" stated that Defendant's requirement that Plaintiff be vaccinated against COVID-19 to continue her employment with Defendant as a radiation therapist, which was "a patient-facing position in the Maimonides Cancer Center," was put in effect to "comply[] with the Department of Health," the requirements of which Defendant "ha[d] no ability to disobey" without "risk[ing] severe penalties, including the revocation of its license." Id. (quotations omitted). The "position paper" further stated that Plaintiff "[wa]s asking the Commission to require Maimonides to risk significant penalties from the DOH by granting her a medical exemption to the COVID-19 vaccine mandate." Id. Plaintiff construed this response to indicate not that she did "not qualify for a [m]edical exemption but that DOH would not be pleased[,] and it would cause a problem for Maimonides." Id. at 3.

### 2.     Rationale For Rejection Of Plaintiff's Request For A Medical Exemption From The COVID-19 Vaccination Requirement

Defendant "was constrained by DOH's Section 16 Order[,] which limited granting [medical exemptions] to two contraindications: i) a severe allergic reaction after a previous dose of the COVID-19 vaccine or ii) an immediate allergic reaction of any severity to a previous or known (diagnosed) allergy to a component of the vaccine." Id. at 10.

### G.     Plaintiff's Termination

Plaintiff did not receive a COVID-19 vaccination by September 27, 2021, and, as such, "was placed on punitive unpaid leave to allow a pending court action about the COVID

mandates in New York State" to be resolved." Id. at 11.  Plaintiff offered, as an accommodation, to wear "an N-95 mask [and] . . . add weekly testing . . . to ensure that she was COVID free." Id. at 8.  From the beginning of the COVID-19 pandemic through her termination, she "wore an N95 mask[,] . . . consented to daily temperature checks[,] and never contracted COVID." Id. at 12. Plaintiff was terminated from her employment with Defendant on November 23, 2021.  See id. at 1, 9.  She was "ordered to leave [her] . . . position – without pay, unemployment or any income due to not being vaccinated." Id. at 4.  At that time, she "had not contracted COVID . . . and could not have transmitted Covid." Id. at 10.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert the defense of failure to state a claim upon which relief can be granted by motion.  Courts addressing motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the" plaintiff.  DeCarlo, 80 F.4th at 168 (citation omitted).  A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018) (citation & quotations omitted).

## III.    DISCUSSION

The Court first discusses Plaintiff's "failure to accommodate" religious discrimination claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), then discusses Plaintiff's "failure to accommodate" claim for disability discrimination pursuant to the Americans with Disabilities Act, 24 U.S.C. §§ 12101 et seq. (the "ADA").[7]

---

[7] Plaintiff's complaint does not specifically set forth either of the foregoing, or any other particular law upon which she relies, or demonstrate her claims as causes of action.  See

### A.    Claim For Religious Discrimination Pursuant To Title VII

Title VII "prohibits discrimination in employment on the basis of religion" by, more specifically, prohibiting an employer from "fail[ing] or refus[ing] to hire or . . . discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." Baker v. The Home Depot, 445 F.3d 541, 546 (2d Cir. 2006) (citation & quotations omitted). For a claim for religious discrimination based on a failure to accommodate pursuant to Title VII to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff "must plausibly allege that (1) [he or she] held a bona fide religious belief conflicting with an employment requirement; (2) [he or she] informed [his or her] employers of this belief; and (3) [he or she] [was] disciplined for failure to comply with the conflicting employment requirement." D'Cunha v. Northwell Health Sys., No. 23 Civ. 476, 2023 WL 7986441, at *2 (2d

---

generally ECF No. 1.  Upon reviewing her complaint, and construing it in Plaintiff's favor, as is required at this juncture, see DeCarlo, 80 F.4th at 168 (citation omitted), the Court has concluded that these two causes of action most aptly fit Plaintiff's factual allegations.  As to her "failure to accommodate" religious discrimination claim, Plaintiff's complaint references Title VII, albeit not as to religious discrimination.  See ECF No. 1 at 3.  As to her "failure to accommodate" disability discrimination claim, appended to Plaintiff's complaint is a document entitled "Information Related to Filing Suit Under the Laws Enforced by the EEOC" (the "EEOC Information Document"), which contains a notice of rights in relation to Plaintiff's assertion of an ADA claim.  See id. at 16-18. The Court notes that Plaintiff has not referenced any state or city laws in her complaint.  See generally id.

In relation to administrative exhaustion, aside from the document setting forth the determination of the EEOC charge and the notice of Plaintiff's right to sue, see id. at 14-15, and the EEOC Information Document, see id. at 16-18, Plaintiff has not submitted any information regarding Plaintiff's filings and proceedings before the EEOC.  The Court therefore has been unable to determine whether Plaintiff exhausted her claims, an issue that Defendant has not raised here.  In particular, while the EEOC Information Document provides information to Plaintiff as to "your ADA claim," it only references Title VII in a general statement regarding the time within which an action must be filed, which includes references to the Equal Pay Act, "Title VII, the ADA, GINA[,] and . . . the ADEA."  Id. at 16-17.

Cir. Nov. 17, 2023) (quoting <u>Knight v. Conn. Dep't of Pub. Health</u>, 275 F.3d 156, 167 (2d Cir. 2001)).  Even if a plaintiff plausibly alleges the foregoing elements of the claim, the defendant employer is not required to accommodate the plaintiff's religious belief if doing so "would cause the employer to suffer an undue hardship," which, substantively, requires a showing that the "burden is substantial in the overall context of an employer's business," <u>id.</u>, at *2 (citation & quotations omitted); <u>see</u> <u>Groff v. DeJoy</u>, 600 U.S. 447, 468 (2023) (holding that an undue hardship is "a burden [that] is substantial in the overall context of an employer's business" (citation omitted)), and, procedurally, "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint." <u>D'Cunha</u>, 2023 WL 7986441, at *2 (citation & quotations omitted); <u>see</u> <u>Clark v. Hanley</u>, 89 F.4th 78, 93-94 (2d Cir. 2023 (stating that "[t]he pleading requirements of the Federal Rules of Civil Procedure do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses" and reasoning that, "[n]evertheless, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint" (citations & quotations omitted)).

## 1.    Elements Of Plaintiff's Claim

The Court first addresses below whether Plaintiff has alleged that she held a <u>bona</u> <u>fide</u> religious belief conflicting with an employment requirement, that she informed Defendant of such belief, and that she was disciplined by Defendant for failure to comply with such employment requirement. <u>See</u> <u>D'Cunha</u>, 2023 WL 7986441, at *2 (quoting <u>Knight</u>, 275 F.3d at 167).

### a.    Whether Plaintiff Held A <u>Bona Fide</u> Religious Belief Conflicting With An Employment Requirement

In relation to whether Plaintiff held a <u>bona fide</u> religious belief conflicting with an employment requirement, the Court addresses below the relevant allegations in Plaintiff's complaint and the parties' arguments, then analyzes whether Plaintiff has sufficiently pleaded this element of the claim.

### i.    Relevant Allegations In Plaintiff's Complaint

As set forth in her complaint, Plaintiff's alleged <u>bona fide</u> religious belief that conflicted with Defendant's COVID-19 vaccination requirement was that, as "a devout Christian[,] . . . [i]t [wa]s against her religious beliefs to take aborted fetal cell lines into her body." ECF No. 1 at 12. Plaintiff claims that her "exemption request was supported by clergy." <u>Id.</u> at 11.

### ii.    The Parties' Arguments

In its motion to dismiss, relying upon <u>Marte v. Montefiore Med. Ctr.</u>, No. 22 Civ. 3491 (CM), 2022 WL 7059182 (S.D.N.Y. Oct. 12, 2022), and <u>Wilson v. New York Soc. for Relief of Ruptured & Crippled, Maintaining the Hosp. for Special Surgery</u>, No. 22 Civ. 9207 (AT) (JLC), 2023 WL 5766030 (S.D.N.Y. Sept. 7, 2023), Defendant contends that "Plaintiff has failed to identify a <u>bona fide</u> religious belief that conflict[ed] with the Hospital's vaccination policy." ECF No. 14-1 at 13-14. More specifically, Defendant asserts that Plaintiff "does not plead what religious beliefs prevent[ed] her from being vaccinated from [sic] COVID 19, or, for example, allege that she has rejected other vaccines or medical treatment based upon the same beliefs." <u>Id.</u> at 14.[8]

---

[8] Defendant also argues that "receiving a COVID-19 vaccine <u>could</u> <u>not</u> <u>possibly</u> <u>violate</u> Plaintiff's single professed belief against accepting 'aborted fetal cell lines into her body,'" asking this Court to "take judicial notice of the fact that none of the COVID-19 vaccines

In her opposition, Plaintiff states that she "has sincerely held religious beliefs that she lives her life upon." ECF No. 23 at 3.[9]

In its reply, Defendant reiterates its argument. See ECF No. 24 at 6-7.

### iii.    Analysis

The Court finds that Plaintiff has sufficiently pleaded that her <u>bona fide</u> religious belief, namely that, because of her Christian beliefs, she should not have received a vaccination or other treatment containing aborted fetal cell lines, ECF No. 1 at 12, conflicted with Defendant's requirement of employment to receive a COVID-19 vaccination.

The decisions cited by Defendant are unpersuasive with regard to the conclusion that it draws from them, namely that Plaintiff has not pleaded a sufficiently specific religious belief conflicting with the COVID-19 vaccination requirement. In <u>Marte</u>, the <u>Marte</u> Plaintiff claimed in her complaint to be "a Born-Again Christian"; however, the plaintiff did not articulate any "bona fide religious belief that conflicted with the mandate" for COVID-19 vaccination in her

---

authorized by the U.S. Food and Drug Administration contain any tissues such as aborted fetal cells, gelatin, or any materials from any animal," a fact stated by the U.S. Centers for Disease Control and Prevention (the "CDC"). ECF No. 14-1 at 14 (emphasis in original) (citations omitted). Preliminarily, the Court notes that the link to a page on the CDC website provided by Defendant in its motion to dismiss is non-functional. Even if the link were functional, the Court may not consider the contents of this web page for their truth. See <u>Lively v. WAFRA Invest. Advisory Grp.</u>, 6 F.4th 293, 304-05 (2d Cir. 2021) (reciting the general rule that "courts may on a Rule 12(c) motion – just as on a Rule 12(b)(6) motion – consider extrinsic material that the complaint incorporate[s] by reference, that is integral to the complaint, or of which courts can take judicial notice" but concluding that "the district court erred by relying on several documents attached to Defendants' answer in deciding their Rule 12(c) motion without converting it into a motion for summary judgment as required by Rule 12(d)" because, as to EEOC and federal court complaints, "[a]lthough the district court may have taken judicial notice that Kraut filed complaints with the EEOC and in federal court, the court erred to the extent that it accepted Kraut's allegations to be true" (citations & quotations omitted)).

[9] In issuing this report and recommendation on Defendant's motion to dismiss, the Court has not considered the letters at ECF No. 23 at 20-21 from a pastor and a friend attesting to Plaintiff's religious beliefs, as doing so would be inappropriate on a motion to dismiss. See <u>supra</u>, n.8.

complaint and only raised her objection "to the use of fetal cells in the COVID-19 vaccines due to her religious beliefs" in her opposition to the defendant's motion to dismiss, which "was never alleged in the complaint itself." Marte, 2022 WL 7059182, at *1, *3 (finding that the plaintiff failed to state a religious discrimination claim pursuant to Title VII on which relief could be granted). In Wilson, the plaintiff alleged in his complaint that he "request[ed] a religious exemption from taking the Coronavirus vaccine due to conflicts with the Mrna [sic] nature of the vaccines and [his] moral/personal beliefs"; however, the plaintiff did "not allege[] that he h[eld] any bona fide religious belief conflicting with the vaccine requirement, or that he h[eld] any bona fide religious belief at all," which was "fatal to his claim." Wilson, 2023 WL 5766030, at *1, *3-4 (concluding that the plaintiff failed to state a religious discrimination claim pursuant to Title VII on which relief could be granted (citations omitted)).

Plaintiff's allegations as to her religious belief are more analogous to the allegations cited in decisions in which courts in this Circuit have concluded that the plaintiffs have sufficiently stated this element of the Title VII claim. See, e.g., Algarin v. NYC Health + Hosps. Corp., 678 F. Supp. 3d 497, 503, 508 (S.D.N.Y. 2023) (reciting the plaintiff's allegation in his complaint that he "requested a religious accommodation and informed H+H that[,] [a]s a practicing Christian, [his] sincerely held religious beliefs prevent[ed] him from receiving a COVID-19 vaccine that was tested, developed, or produced with fetal cell lines derived from procured abortions" and holding that "these allegations are sufficient to assert the first two prongs of a plausible prima facie case of discrimination" (citation & quotations omitted)), aff'd, No. 23 Civ. 1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024); Jackson v. New York State Office of Mental Health – Pilgrim Psychiatric Ctr., No. 23 Civ. 4164 (JMA) (ARL), 2024 WL 1908533, at *6 (E.D.N.Y. May 1, 2024) (concluding that the "[p]laintiff ple[a]d[ed] the relevant bona fide

religious belief" because "[s]he ple[a]d[ed] that the COVID-19 vaccine mandate . . . conflict[ed] with [her] . . . sincerely held religious beliefs," only providing more specific details as to her belief that "the COVID-19 vaccine [would] . . . interfere with [her] . . . immune system[,] . . . which [she] . . . believe[d] God created to be robust," and that "the COVID-19 vaccines [we]re produced by, derived from, manufactured with, tested on, developed with, or [were] otherwise connected to aborted fetal cell lines," in her opposition to the defendant's motion to dismiss (citations & quotations omitted)).

### b.    Whether Plaintiff Informed Defendant Of Her Religious Belief

In relation to whether Plaintiff informed Defendant of her religious belief, the Court addresses below the relevant allegations in Plaintiff's complaint and the parties' arguments, then analyzes whether Plaintiff has sufficiently pleaded this element of the claim.

### i.    Relevant Allegations in Plaintiff's Complaint

As set forth in her complaint, Plaintiff submitted to Defendant a request for a religious exemption from the COVID-19 vaccination requirement, which "was supported by clergy." Id. at 11. The basis for her request was that she was "a devout Christian" and that "[i]t [wa]s against her religious beliefs to take aborted fetal cell lines into her body." Id. at 12.

### ii.    The Parties' Arguments

Neither party disputes that Plaintiff informed Defendant of her religious belief that conflicted with the COVID-19 vaccination requirement.

### iii.    Analysis

The Court finds that Plaintiff has sufficiently pleaded that she informed Defendant that her religious belief conflicted with Defendant's COVID-19 vaccination requirement. See Algarin, 678 F. Supp. 3d at 508 (finding that the plaintiff's allegation in his complaint "that[,]

after H+H informed [him] . . . that he had to be vaccinated against COVID-19 on September 8, 2021, [the p]laintiff advised H+H that, as a practicing Christian, his sincerely held religious beliefs prevented him from receiving a COVID-19 vaccine that was tested, developed, or produced with fetal cell lines derived from procured abortions" satisfied "the first two prongs of a plausible prima facie case of discrimination" (citation & quotations omitted)); Jackson, 2024 WL 1908533, at *6 (concluding that, as the "[p]laintiff ple[a]d[ed] that she informed OMH on October 25, 2021, of her religious objections to its vaccine requirement" by "submitt[ing] OMH's religious accommodation form with a two-page letter that detailed Plaintiff's religious objections to OMH's COVID-19 vaccination requirement," the plaintiff had "satisfi[ed] the second element of [her] . . . prima facie case" (citations omitted)).

### c. Whether Plaintiff Was Disciplined For Failure To Comply With The Conflicting Employment Requirement

In relation to whether Plaintiff was disciplined for failure to comply with the conflicting employment requirement, the Court addresses below the relevant allegations in Plaintiff's complaint and the parties' arguments, then analyzes whether Plaintiff has sufficiently pleaded this element of the claim.

### i. Relevant Allegations In Plaintiff's Complaint

Plaintiff did not receive a COVID-19 vaccination by September 27, 2021, and, as such, "was placed on punitive unpaid leave to allow a pending court action about the COVID mandates in New York State" to be resolved. ECF No. 1 at 11. Plaintiff's request for a religious exemption was denied on November 16, 2021. See id. Plaintiff was terminated from her employment with Defendant on November 23, 2021. See id. at 1, 9. She was "ordered to leave [her] . . . position – without pay, unemployment or any income due to not being vaccinated." Id. at 4.

### ii.  The Parties' Arguments

Neither party disputes that Plaintiff was placed on unpaid leave by Defendant, with her employment subsequently terminated, due to her failure to comply with the COVID-19 vaccination requirement.

### iii.  Analysis

The Court finds that Plaintiff has sufficiently pleaded that she was terminated due to her failure to comply with the COVID-19 vaccination requirement. See Algarin, 678 F. Supp. 3d at 509 (reciting the plaintiff's allegation that "his employment was terminated for failure to comply with the mandatory vaccination requirement" and concluding that "[a]llegations of termination of employment for failure to comply with the conflicting employment requirement of mandatory vaccination are sufficient to plead the final element of the prima facie case of religious discrimination for failure to accommodate" (citations omitted)); Jackson, 2024 WL 1908533, at *6 (finding the plaintiff's allegation that the defendant "suspended her without pay and ultimately terminated her employment because she declined to take the COVID-19 vaccine" to be "sufficient to plead the final element of the prima facie case of religious discrimination for failure to accommodate" (citations & quotations omitted)).

### 2.  Defendant's Undue Hardship Defense

In relation to Defendant's undue hardship defense, the Court addresses below the relevant allegations in Plaintiff's complaint and the parties' arguments, then analyzes whether Defendant has sufficiently stated this defense such that Plaintiff's Title VII claim must be dismissed. Plaintiff does not plead that the hardship defense was pretextual.

a.    **Relevant Allegations In Plaintiff's Complaint**

According to the complaint, in 2020 and 2021, Defendant "implemented the process to respond to the Department of Health's process to implement the C[OVID]-19 mandates," which included "seek[ing] to have the population of many parts of the world become vaccinated with the COVID-19 vaccine."  ECF No. 1 at 1.  Defendant "followed the mandates of the DOH" in relation to implementing a COVID-19 vaccination requirement for employees.  Id. at 3; see id. at 2 (reciting that Defendant issued a "position paper" on June 6, 2022, stating (1) that "it [wa]s a healthcare institution that must comply with all rules and regulations issued by the New York State Department of Health[,] . . . including the COVID-19 mandate implemented in August 2021"; (2) that Defendant's requirement that Plaintiff be vaccinated against COVID-19 to continue her employment with Defendant as a radiation therapist, which was "a patient-facing position in the Maimonides Cancer Center," was put in effect to "comply[] with the Department of Health," whose requirements Defendant "ha[d] no ability to disobey" without "risk[ing] severe penalties, including the revocation of its license"; and (3) that "there [wa]s no religious exemption to the COVID-19 mandate for patient facing [sic] employees" (quotations omitted)).  Defendant also issued a "[r]egulation" removing "any reference to a religious exemption as a means not to abide by the vaccine mandate[;] as such[,] the DOH clearly show[ed] that a religious exemption was not available to Maimonides personnel."  Id. at 3.

b.    **The Parties' Arguments**

In its memorandum in support of its motion to dismiss, Defendant contends that "[a]n employer suffers an 'undue hardship' when it incurs anything that would inflict more than a de minimis burden on the employer" and posits that, "no matter what an employee's religious

beliefs are, an employer is not required to violate the law in order to accommodate them," which is "precisely what Plaintiff is arguing the Hospital should have done."  ECF No. 14-1 at 17.

In her opposition, Plaintiff recites law governing the "undue hardship" defense but does not analyze how such law applies to the facts of this case.  See ECF No. 23 at 11.

In its reply, Defendant reiterates its argument that granting Plaintiff a religious exemption or accommodation would have required Defendant to violate applicable law, which would have been an undue hardship.  See ECF No. 24 at 8-10.

### c.    Analysis

The Court finds that, although Plaintiff has sufficiently pleaded that she held a bona fide religious belief conflicting with the COVID-19 vaccination requirement, that she informed Defendant of such belief, and that she was placed on unpaid leave and subsequently terminated from her employment with Defendant as a result of her failure to comply with the COVID-19 vaccination requirement, based on the allegations in the complaint, Defendant would have suffered an undue hardship by granting her requested religious exemption, or by otherwise accommodating her religious belief, such that Plaintiff's Title VII claim fails.  The Court acknowledges that it is not usual for the Court to be able to assess a defendant's defense on a motion to dismiss, but it is permissible in this case because Plaintiff pleads that Defendant suspended and dismissed her because of the Regulation, upon which Defendant rests its primary defense.  The dispute between the parties in this regard is a legal, not factual, dispute.

### i.    Whether Plaintiff Was Entitled To A Religious Exemption From The COVID-19 Vaccination Requirement

Plaintiff was not entitled to a religious exemption from the COVID-19 vaccination requirement, in view of Defendant's undue hardship.

The Regulation[10] provided that "[c]overed entities[11] shall continuously require personnel to be fully vaccinated against COVID-19, with the first dose for current personnel[12] received by September 27, 2021 for general hospitals and nursing homes, and by October 7, 2021 for all other covered entities absent receipt of an exemption as allowed below."  10 NYCRR § 2.61(c). The Regulation dictated that "[c]overed entities . . . develop and implement a policy and procedure to ensure compliance with the provisions of this section."  10 NYCRR § 2.61(f).  The Regulation only allowed for qualifying medical exemptions.  See 10 NYCRR § 2.61(d).  The Regulation "contain[ed] no 'exemption' for personnel who oppose[d] vaccination on religious or any other grounds not covered by the medical exemption." We the Patriots USA, Inc. v. Hochul, 17 F.4th 266, 275 (2d Cir. 2021) ("We the Patriots USA I"), opinion clarified, 17 F.4th 368 (2d Cir. 2021) ("We the Patriots USA II").[13]  In sum, the Regulation

---

[10] The Regulation went into effect on August 26, 2021 and was effective through November 23, 2021, at which time it was re-issued; it subsequently underwent further re-issuances, underwent an amendment, and was eventually repealed.  Given the termination of Plaintiff's employment on November 23, 2021, see ECF No. 1 at 1, 9, the Court considers this first version of the Regulation in effect at the time.  See D'Cunha, 2023 WL 7986441, at *3 n.4 (stating that "[t]he fact that the State Mandate was repealed in October 2023 does not change our analysis in the present case as the events at issue occurred in 2021").

[11] "Covered entities" are defined, inter alia, as "any facility or institution included in the definition of 'hospital' in section 2801 of the Public Health Law, including but not limited to general hospitals, nursing homes, and diagnostic and treatment centers."  10 NYCRR § 2.61(a)(1).  No party disputes that Defendant is a "covered entity."

[12] "Personnel" are defined as "all persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."  10 NYCRR § 2.61(a)(2).  No party disputes that Plaintiff was employed as "personnel" in her role as a patient-facing radiation therapist for Defendant.

[13] The Court notes that, prior to the promulgation of the Regulation, on August 18, 2021, the "New York State Commissioner of Health . . . issued an 'Order for Summary Action' . . . under

18

require[d] all covered employees who c[ould have] safely receive[d] the vaccine to be vaccinated.  It applie[d] whether an employee [wa]s eager to be vaccinated or strongly opposed, and it applie[d] whether an employee's opposition or reluctance [wa]s due to philosophical or political objections to vaccine requirements, concerns about the vaccine's efficacy or potential side effects, or religious beliefs.

Id. at 282.

Granting a religious "exemption from the COVID-19 vaccination requirement" to a healthcare professional, such as Plaintiff, while allowing that professional to "continu[e] to provide direct patient care[,] . . . would have posed an undue hardship on [a hospital employer] . . . . because it would have required it to violate the New York State Department of Health's . . . State Mandate, issued on August 26, 2021, mandating that all 'personnel' employed in 'covered entities,' such as hospitals, be vaccinated by September 27, 2021," thereby subjecting the hospital employer, such as Defendant, to potential penalties.  D'Cunha, 2023 WL 7986441, at *2-3 (citations & footnote omitted).  Holding that Defendant was required to grant Plaintiff's religious exemption request would necessitate the conclusion that Defendant was required to violate the Regulation, which, at the time of Plaintiff's termination, was state law that bound Defendant; this would have been an undue hardship.  See, e.g., Cagle v. Weill Cornell Med., 680 F. Supp. 3d 428, 436 (S.D.N.Y. 2023) (noting that "[a] long line of cases in the Southern and Eastern Districts of New York have considered the application of Section 2.61's Mandate to persons whose religious beliefs allegedly conflict[ed] with the taking of a COVID-19 vaccine,"

---

the authority vested in him by New York Public Health Law § 16," which "permits the Commissioner to issue a short-term order – effective for a maximum of 15 days – if he identifies a condition that in his view constitutes a danger to the health of the people."  We the Patriots USA I, 17 F.4th at 275 (citations & quotations omitted).  This Order "differed from Section 2.61, [or the Regulation,] which superseded it, in several respects," including that "the Order included a religious exemption for personnel who h[e]ld a genuine and sincere religious belief contrary to the practice of immunization," whereas the Regulation did not include a religious exemption.  Id. (citation & quotations omitted).

recounting that "[t]hose cases have uniformly rejected claims that an employer [wa]s required by Title VII to accommodate a request for a religious exemption from the Mandate at the cost of violating Section 2.61 and thus New York law," and holding that the plaintiff failed to state a claim pursuant to Title VII upon which relief can be granted (collecting cases) (footnote omitted)).

### ii.    Whether Plaintiff Was Entitled To A Religious Accommodation In Relation To The COVID-19 Vaccination Requirement

Plaintiff has not sufficiently pleaded facts upon which the Court could conclude that she was entitled to a religious accommodation in relation to the COVID-19 vaccination requirement, in view of Defendant's claimed undue hardship.

The Regulation,

> on its face, d[id] not bar an employer from providing an employee with a reasonable accommodation that remove[d] the individual from the scope of the Rule. Section 2.61 d[id] not require employers to violate Title VII because, although it bar[red] an employer from granting a religious exemption from the vaccination requirement, it d[id] not prevent employees from seeking a religious accommodation allowing them to continue working consistent with the Rule, while avoiding the vaccination requirement.

We the Patriots USA I, 17 F.4th at 292 (citation omitted). "Title VII d[id] not require covered entities to provide the accommodation that [the p]laintiffs prefer[red]," such as "a blanket religious exemption allowing them to continue working at their current positions unvaccinated." Id. Rather, "an employer must [have] offer[ed] a reasonable accommodation that d[id] not cause the employer an undue hardship." Id. (emphasis in original). While "it may [have] be[en] possible under the Rule for an employer to accommodate – not exempt – employees with religious objections, by employing them in a manner that remove[d] them from the Rule's definition of 'personnel,'" which "would have [had] the effect under the Rule of permitting such

employees to remain unvaccinated while employed[,] . . . Title VII d[id] not obligate an employer to grant an accommodation that would [have] cause[d] undue hardship on the conduct of the employer's business." We the Patriots USA II, 17 F.4th at 370 (citations & quotations omitted).

Plaintiff proposed to Defendant an "accommodation" that she be allowed to continue working while she would wear "an N-95 mask [and] . . . add weekly testing . . . to ensure that she was COVID free," in lieu of receiving the COVID-19 vaccination. ECF No. 1 at 11. This proposed "accommodation" in lieu of vaccination, however, was tantamount to a request for a religious exemption from the COVID-19 requirement contrary to state law; therefore, the Court finds that the proposed accommodation would have posed an undue hardship to Defendant for the same reasons that the religious exemption would have posed an undue hardship to Defendant. See Adamowicz v. Northwell Health Inc., No. 2:23 Civ. 1277 (OEM) (LGD), 2024 WL 1072210, at *8 (E.D.N.Y. Mar. 12, 2024) (describing the plaintiffs as "front-line health care workers," considering their proposed "accommodation . . . to continue to wear masks and receive weekly Covid-19 tests" in lieu of vaccination, reasoning that such an accommodation request was tantamount to a request for an impermissible religious exemption, and concluding "that the [d]efendant would have suffered an undue hardship if it accommodated [the p]laintiffs' religious Covid-19 vaccine exemption request because doing so would have required [the d]efendant to violate the law" (citations & footnote omitted)), appeal filed, No. 24 Civ. 1042 (2d Cir. Apr. 22, 2024), appeal filed, No. 24 Civ. 1182 (2d Cir. May 2, 2024); Jackson, 2024 WL 1908533, at *7 (holding that the "[d]efendants correctly contend that [the p]laintiff's requested accommodations that would [have] allow[ed] her to work on site – i.e. her requests for weekly testing or a 'hybrid' schedule of reduced in-person work – without taking the COVID-19 vaccine would have

imposed an undue hardship as a matter of law," as the defendant "could not have granted these accommodations without violating [Section 2.61], exposing itself to potential penalties, and thereby suffering an undue hardship" (citations & quotations omitted)); Addonizio v. Nuvance Health, No. 23 Civ. 1582 (LAP), 2024 WL 2958795, at *6 (S.D.N.Y. June 11, 2024) (reasoning that the "[p]laintiff has alleged sufficient facts to make out a prima facie case for religious discrimination under Title VII," such that "[t]he burden thus shifts to [the d]efendants to demonstrate that they could not have accommodated [the p]laintiff's request without undue hardship"; holding that the "[d]efendants correctly contend that [the p]laintiff's requested accommodation would have imposed an undue hardship on their business as a matter of law," given that the "[p]laintiff was a [p]atient [c]are [t]echnician, which clearly falls within the definition of 'personnel' under Section 2.61," who only sought an accommodation of "remain[ing] in the same role, unvaccinated, and . . . wear[ing] a mask, socially distanc[ing], and submit[ting] herself to weekly testing," which "would not have removed her from the scope of Section 2.61 . . . and . . . would have subject[ed the d]efendants to legal liability"; and, as a result, dismissing the plaintiff's religious discrimination claims (citations omitted)); Pastor v. Mercy Med. Ctr., No. 22 Civ. 7847 (JMA) (AYS), 2024 WL 3029118, at *4 (E.D.N.Y. June 17, 2024) (concluding that the "[p]laintiff's requests that MMC allow her to work on site – i.e., her requests to undergo masking, social distancing, and weekly or bi-weekly COVID-19 testing – would have imposed an undue hardship as a matter of law" because "MMC could not have granted those requests without violating [Section 2.61], exposing itself to potential penalties, and thereby suffering an undue hardship" (citation, quotations, & footnote omitted)).

Plaintiff has not alleged circumstances under which Defendant could have accommodated Plaintiff in her role as a patient-facing radiation therapist, such that she would have no longer

qualified as "personnel" under the Regulation, as she would not have "engage[d] in activities

such that[,] if [she] . . . were infected with COVID-19, [she] . . . could [have] potentially

expose[d] other covered personnel, patients or residents to the disease," namely working

remotely, thereby potentially avoiding the imposition of an undue hardship on Defendant. 10

NYCRR § 2.61(a)(2); see, e.g., Jackson, 2024 WL 1908533, at *8 (reasoning that entirely remote

work places an employee outside the Regulation's definition of "personnel" (collecting cases)).

In her complaint, Plaintiff alleges that she "was a patient-facing [r]adiation [t]herapist" who

"work[ed] closely with patients and other staff at the Maimonides Cancer Center to administer

radiation treatment to cancer patients." ECF No. 1 at 8; see Conde v. Mid Hudson Reg. Hosp.

Med. Ctr., No. 22 Civ. 3085 (VB), 2024 WL 168282, at *1, *7-8 (S.D.N.Y. Jan. 12, 2024)

(considering the defendant's motion to dismiss the plaintiff's amended complaint and rejecting

the plaintiff's proposed "accommodations[,] such as placing [her] . . . in a work environment that

minimized or eliminated contact with patients, visitors, or hospital personnel, because they could

not be achieved without undue hardship to the defendant, as, "in light of [the] plaintiff's role as a

patient-facing nurse, the [c]ourt cannot conceive of an accommodation that would neither have

violated Section 2.61 nor resulted in an undue burden to [the] defendants," particularly given that

the "plaintiff would have been unable to perform patient care duties requiring physical contact

with patients," necessitating that "another nurse . . . cover those duties or [the] defendants . . .

hire a replacement nurse" (citations & quotations omitted)).

 Plaintiff further alleges that Defendant "[f]ailed to offer any accommodation for the

religious exemption though the hospital . . . has many positions at different levels." ECF No. 1

at 3. In spite of this passing reference in her complaint to Defendant having "many positions at

different levels" in relation to accommodating her religious beliefs, see id., Plaintiff does not

allege that she was qualified for any position other than that of a patient-facing radiation therapist or that she requested to be reassigned to another position that would have fallen outside of the definition of "personnel" in the Regulation. At this juncture, and based on Plaintiff's complaint and Defendant's defense of undue hardship, the Court must conclude that accommodating Plaintiff in an alternative, remote role would have posed an undue hardship for Defendant. See Haczynska v. Mount Sinai Health Sys., Inc., No. 23 Civ. 3091 (MKB), 2024 WL 3178639, at *11, *13 (E.D.N.Y. June 26, 2024) (noting that, in deciding a motion to dismiss, "[t]o establish a claim for failure to accommodate, a plaintiff has the initial burden to prove a prima facie case of discrimination" and that "[t]he burden then shifts to the defendant to establish that it offered the plaintiff a reasonable accommodation, or that such an accommodation would have been an undue hardship," and concluding that, while "it may [have] be[en] possible under [Section 2.61] for an employer to accommodate – not exempt – employees with religious objections, by employing them in a manner that remove[d] them from [Section 2.61's] definition of 'personnel," given that the "[p]laintiffs do not allege that they requested any accommodation that would have removed them from this definition" or "allege that their roles would have permitted such an accommodation," but rather only proposed "a blanket exemption" or "a change to their work schedules to lessen interaction with co-workers," the "[p]laintiffs' allegations are insufficient to show that Mount Sinai Defendants could have accommodated their religious beliefs without undue hardship," requiring dismissal of the plaintiffs' Title VII claims (emphasis in original) (citations & quotations omitted)).

**B.    Claim For Disability Discrimination Pursuant To The ADA**

The ADA proscribes "employment discrimination against a qualified individual on the basis of disability." Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 166 (2d Cir. 2024)

(citation & quotations omitted). For a claim for disability discrimination based on a failure to accommodate pursuant to the ADA to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plausibly "allege that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Dooley v. JetBlue Airways Corp., 636 F. App'x 16, 18 (2d Cir. 2015) (citation & quotations omitted).

### 1.    Elements Of Plaintiff's Claim

The Court addresses below whether Plaintiff has alleged that she is an individual with a disability pursuant to the ADA, that Defendant is subject to the ADA and had notice of Plaintiff's disabilities, that Plaintiff could perform the essential functions of her job with a reasonable accommodation, and that Defendant did not provide Plaintiff with such an accommodation. See id. (citation omitted).

### a.    Whether Plaintiff Was An Individual With A Disability Pursuant To The ADA

In relation to whether Plaintiff was an individual with a disability pursuant to the ADA, the Court addresses below the relevant allegations in Plaintiff's complaint and the parties' arguments, then analyzes whether Plaintiff has sufficiently pleaded this element of the claim.

### i.    Relevant Allegations In Plaintiff's Complaint

Plaintiff alleges that she "made the decision not to take the COVID-19 vaccines for reasons related to her pre existing [sic] health issues with bells [sic] Palsy," which she had contracted twice before, "and her faith." ECF No. 1. at 1-2, 11 (emphasis in original). With her request for a medical exemption, Plaintiff submitted to Defendant "discharge papers" from a

physician who diagnosed her with Bell's Palsy and a note from another physician "to show the considerable amount of anxiety and mental stress she was under knowing that she had two bouts of Bells [sic] Palsy in the past," as "[b]eing forced to take a vaccine that had triggered the condition in others was a cause of deep concern." Id. at 11.

### ii.        The Parties' Arguments

In its motion to dismiss, Defendant does not address whether Plaintiff was an individual with a disability pursuant to the ADA.

In her opposition to the motion to dismiss, Plaintiff contends that receiving a COVID-19 vaccination would have "potentially plac[ed] her life in serious harm" because of "her history with Bells [sic] Palsy." ECF No. 23 at 8.

In its reply, Defendant argues that "it is difficult to ascertain exactly what Plaintiff's alleged disability [wa]s." ECF No. 24 at 11. As to her history of Bell's Palsy, Defendant contends that she "does not specify how" Bell's Palsy "affected her daily life activities." Id. at 11 (citation omitted). As to her anxiety arising from fear of a recurrence of Bell's Palsy, Defendant argues that her anxiety related to a possible side effect of a COVID-19 vaccination was not a qualifying disability pursuant to the ADA. See id. at 13 (citations omitted).

### iii.        Analysis

Plaintiff has not sufficiently pleaded that she was an individual with a disability pursuant to the ADA.

The ADA protects individuals (1) "who have a physical or mental impairment that substantially limits one or more major life activities,"[14] (2) "who are discriminated against

---

[14] "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading,

because they have a record of such an impairment," and (3) "who are discriminated against because they . . . are regarded as having such an impairment." Sharikov, 103 F.4th at 166-67 (citations & quotations omitted); see 42 U.S.C. § 12102(1).

Plaintiff appears to be asserting that either or both of her historical occurrences of Bell's Palsy and her anxiety regarding a recurrence of Bell's Palsy were qualifying disabilities pursuant to the ADA, in accordance with the first category of qualifying disabilities above. Plaintiff has not pleaded sufficient facts to enable the Court to find that she was an individual with a qualifying disability because, more specifically, she has not pleaded that her physical or mental impairment substantially limited at least one major life activity. See, e.g., Osby v. City of New York, 633 F. App'x 12, 13 (2d Cir. 2016) (reasoning that "[i]t is not clear to us that the complaint as pleaded establishes that Osby suffered from a disability at all, as her vague references to knee problems that required surgery do not suffice to allege that those problems [we]re an impairment that substantially limit[ed] one or more [of her] major life activities, or that she [wa]s regarded as having such an impairment" (citation & quotations omitted)); Chauvin v. Terminix Pest Control, Inc., No. 22 Civ. 3673, 2023 WL 7683833, at * (E.D. La. Nov. 15, 2023), (reasoning that, [w]hile some courts have held that Bell's Palsy coupled with a permanent side effect is a disability under the ADA, [the p]laintiff's assertion that his prior documented case of Bell's Palsy years ago impact[ed] his ability to receive a vaccine is much different," particularly given that he describes it "as a prior adverse event" and as a "past experience, . . . alleges no present or permanent side effect that substantially limits his ability to perform a class or broad

---

concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). They also include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B).

range of jobs," and alleges that his only present impairment "is fear of adverse events" (citations & quotations omitted)), aff'd, Nos. 23 Civ. 30617, 23 Civ. 20846, & 23 Civ. 30856, 2024 WL 3440465 (5th Cir. July 17, 2024); Mabry v. Neighborhood Defender Service, 769 F. Supp. 2d 381, 399-402 (S.D.N.Y. 2011) (noting the plaintiff's allegations "that he suffer[ed] from anxiety, depressed mood, stress, chronic tension headache, [and] insomnia," with unknown duration and the conditions being "dependent on work situation and stressors," which may have given rise to the "need to take sick time in order to attend once weekly psychotherapy sessions," thereby interfering with work, a major life activity, but concluding that the plaintiff had not sufficiently stated this element of the claim because his complaint alleged "no facts tending to show that his medical condition limit[ed], let alone substantially limit[ed], his life activity of working in any way" (citations, quotations, & footnote omitted)).  As such, the Court concludes that Plaintiff has failed to satisfy this element of the claim.

### b.    Whether Defendant Was Subject To The ADA And Had Notice of Plaintiff's Disabilities

Neither Plaintiff nor Defendant disputes that Defendant was a "covered entity" pursuant to Title I of the ADA, defined as, inter alia, "an employer," which is further defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person."  24 U.S.C. § 12111.  Neither Plaintiff nor Defendant disputes that Defendant had notice of Plaintiff's alleged disabilities.  See ECF No. 1 at 11.

### c.    Whether Plaintiff Was Able To Perform The Essential Functions Of The Job, With, Or Without, A Reasonable Accommodation

Plaintiff has not sufficiently pleaded that she was able to perform the essential functions of her job, with, or without, a reasonable accommodation.

The Regulation, which allowed for qualifying medical exemptions, provided that
"[p]ersonnel shall be exempt from the COVID-19 vaccination requirements set forth in
subdivision (c) of this section . . . [i]f any licensed physician or certified nurse practitioner
certifies that immunization with COVID-19 vaccine is detrimental to the health of [a] member of
a covered entity's personnel, based upon a pre-existing health condition," in which case "the
requirements of this section relating to COVID-19 immunization shall be inapplicable only until
such immunization is found no longer to be detrimental to such personnel member's health."
The Regulation further required that "[t]he nature and duration of the medical exemption . . . be
in accordance with generally accepted medical standards, (see, for example, the
recommendations of the Advisory Committee on Immunization Practices of the U.S. Department
of Health and Human Services [("ACIP")]), and any reasonable accommodation may be
granted."  10 NYCRR § 2.61(d).[15]

The Regulation "provide[d] for an objectively defined category of people to whom the
vaccine requirement d[id] not apply: employees who present[ed] a certification from a physician
or certified nurse practitioner attesting that they ha[d] a pre-existing health condition that

---

[15] The ACIP standards provided that the "cognizable contraindications to the COVID-19
vaccines were limited to "[s]evere allergic reaction (e.g., anaphylaxis) after a previous dose or to
a component of the COVID-19 vaccine" and "[i]mmediate (within 4 hours) allergic reaction of
any severity to a previous dose or known (diagnosed) allergy to a component of the COVID-19
vaccine." We the Patriots USA I, 17 F.4th at 289 n.28 (citation omitted).  They further provided
that "[p]recautions to the vaccines [we]re limited to [c]urrent moderate to severe acute illness[,] .
. . [h]istory of an immediate allergic reaction to any other (not COVID-19) vaccine or injectable
therapy (excluding allergy shots)[, and] [h]istory of myocarditis or pericarditis after receiving the
first dose of an mRNA COVID-19 vaccine," as well as contraindications to any other of the
types of COVID-19 vaccines. Id. (citations & quotations omitted).  Although "[a]n individual
who ha[d] a contraindication to the vaccine c[ould not have] be[en] safely vaccinated, . . . [m]ost
people deemed to have a precaution to a COVID-19 vaccine at the time of their vaccination
appointment c[ould have] and should [have] be[en] administered [the] vaccine after conducting a
risk assessment with a healthcare provider."  Id. (citation & quotations omitted).

render[ed] the vaccination detrimental to their health, in accordance with generally accepted medical standards, such as those published by ACIP, for the period during which vaccination remain[ed] detrimental to their health.  A written description of the nature and duration of the condition must [have] be[en] furnished, and the exemption must [have] be[en] documented." We the Patriots USA I, 17 F.4th at 289 (citation & footnote omitted).  The Regulation, "[o]n its face, . . . [afforded] no meaningful discretion to the State or employers," a conclusion that was not altered by the need for "physicians and nurse practitioners [to] . . . use their medical judgment to determine whether an individual ha[d] a contraindication or precaution against receiving the vaccine."  Id. (citation & footnote omitted).

> **i.    Whether Plaintiff Was Able To Perform The Essential Functions Of Her Job Without A Reasonable Accommodation**

Plaintiff has not sufficiently pleaded that she was able to perform the essential functions of her job without a reasonable accommodation.  To have allowed Plaintiff to continue her work as a member of Defendant's "personnel," as defined in the Regulation, without receiving a COVID-19 vaccination, as required by the Regulation, and without implementing any reasonable accommodation addressing that she did not receive a COVID-19 vaccination, due, in part, to her claimed disabilities,[16] would have placed Defendant in violation of the Regulation.  As such, Plaintiff was unable to perform the essential functions of her job without a reasonable accommodation.

---

[16] The Court notes that it concluded that Plaintiff has not sufficiently pleaded that she is an individual with a disability pursuant to the ADA, as discussed supra, Sec. III(B)(1)(a)(iii).

ii.    **Whether Plaintiff Was Able To Perform The Essential Functions Of Her Job With A Reasonable Accommodation**

Plaintiff has not pleaded that she was able to perform the essential functions of her job with a reasonable accommodation.

Plaintiff has not pleaded that she satisfied the documentary procedures, namely submitting a certification from a qualifying health professional stating that receipt of the COVID-19 vaccination would have been detrimental to her health due to a preexisting condition, which described therein the nature and duration of such condition.  Plaintiff submitted to Defendant a request for an exemption from the COVID-19 vaccination requirement on a medical basis, which was accompanied by "discharge papers" from a physician who diagnosed her with Bell's Palsy and a note from a physician "to show the considerable amount of anxiety and mental stress she was under knowing that she had two bouts of Bells [sic] Palsy in the past," as "[b]eing forced to take a vaccine that had triggered the condition in others was a cause of deep concern." Id. at 11.  The note stated that Plaintiff "[wa]s a patient on follow up at our office," that "[s]he ha[d] history of recurrent Bell's Palsy," and that she "[wa]s very concerned and fearful of taking COVID-19 vaccine because of fact."  ECF No. 23 at 18.  The note was not in the form of a certification, did not state that receiving the COVID-19 vaccination would have been detrimental to Plaintiff's health due to a pre-existing condition, and did not provide information as to the nature and duration of the medical exemption needed, all of which were required by the Regulation.

Plaintiff also has not pleaded that she was afflicted with a condition, as set forth in the ACIP standards, that would have rendered her eligible for a medical exemption pursuant to the Regulation.  She has not pleaded facts sufficient to show that, even if she had submitted the

required documentation in support of her request for a medical exemption to Defendant, she was entitled to such an exemption.  More specifically, Plaintiff has not claimed how her claimed disabilities, namely Bell's Palsy and anxiety, fell within the purview of the ACIP standards, see supra, n.15, which were incorporated by reference into the Regulation.

Therefore, because Plaintiff has not pleaded facts sufficient to show her entitlement to the medical exemption, Defendant would have been unable to grant her medical exemption and accommodate her to enable her to perform the essential functions of her position without violating the Regulation.  As such, the proposed accommodation, namely granting the medical exemption, would have been unreasonable.  Plaintiff fails to satisfy this element of the claim.

### d.   Whether Defendant Failed To Provide A Reasonable Accommodation

Neither Plaintiff nor Defendant disputes that Defendant did not provide a reasonable accommodation for Plaintiff's alleged disabilities.  See ECF No. 1 at 8, 10-11.  As such, Plaintiff has satisfied this element of the claim.

## IV.   CONCLUSION

For the reasons discussed above, this Court respectfully recommends that Plaintiff's complaint be dismissed without prejudice and that Plaintiff be granted leave to replead to remedy the deficiencies identified in this report and recommendation.

## V.   OBJECTIONS

Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen days of service.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and

recommendation by both the District Court and the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (reasoning that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision" (citation & quotations omitted)).

The Court will mail a copy of this report and recommendation to Plaintiff at 579 Schroeders Avenue, Brooklyn, NY 11239.

Dated: Brooklyn, New York
        August 12, 2024

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge